Ray BOSTIC, Plaintiff–Appellant,

v.

CITY OF CHICAGO, James Pienta and William Marley, Defendants–Appellees.

No. 91–2458.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 20, 1992.

Decided Dec. 23, 1992.

Rehearing and Rehearing En Banc Denied Jan. 27, 1993.

Elizabeth Dale, Kenneth N. Flaxman (argued), Chicago, IL, for plaintiff-appellant.

Diane Larsen, Office of the Corp. Counsel, Lawrence Rosenthal, Deputy Corp. Counsel (argued), Frederick S. Rhine and Kelly R. Welsh, Asst. Corp. Counsel, Benna R. Solomon, Office of the Corp. Counsel, Appeals Div., Chicago, IL, for defendants-appellees.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

BAUER, Chief Judge.

Ray Bostic sued the City of Chicago ("the City") and two Chicago Police Department Detectives, James Pienta and William Marley, under 42 U.S.C. § 1983 claiming that defendants violated his Fourth Amendment rights. The district court granted summary judgment in favor of the defendants and Bostic appealed. Because we find no violation of Bostic's constitutional rights, we affirm.

## I. Facts

On June 30, 1985, Curtis Cotton was shot to death outside the Illusion Lounge, a Chicago tavern. Lisa Hodges, Bostic's ex-girlfriend, anonymously called the police and said that Bostic had killed Cotton. After the police traced the call to Hodges, she told them in an interview that she was at the Illusion Lounge on the night of the murder and that she saw Bostic lowering a gun after she heard gunfire. On July 3, 1985, the police arrested Bostic for the murder. The police conducted a search of Bostic's apartment and found a .38 caliber gun, cartridges, and an empty holster. The police also discovered that Bostic had called in sick at work the morning after the shooting. This was something he did not usually do. After almost 24 hours, an assistant

state's attorney, James Andreou, decided not to file charges against Bostic. Appellant's Brief at 4. Pienta and Marley decided to keep Bostic in custody while the investigation continued. *Id.* This decision was consistent with Chicago Police Department policy. Finally, on July 5, 1985, at about 1:30 a.m., the police released Bostic.

After releasing Bostic, the Chicago police continued investigating the Cotton murder. The police interviewed several witnesses, all of whom gave varying descriptions of the person who killed Cotton. The description of at least one witness, Debra Wallace, described Cotton's assailants as much shorter and younger than Bostic. *See* Appellant's Brief at 5. Another witness, Steve Burks, claimed that he saw Bostic arguing with Cotton on the night of the murder.

Next, on August 5, 1985, Pienta re-arrested Bostic. Unlike the first arrest, this time an assistant state's attorney decided to file murder charges against Bostic. On August 6, 1985, Bostic appeared in a Cook County Circuit Court and bond was set at $100,000. Bostic was unable to pay his bond and so he remained in jail. On August 30, 1985, a grand jury returned an indictment which charged Bostic with murder and armed violence.

Bostic's trial was set for February 21, 1986. On that date, two eyewitnesses to the Cotton homicide—Evelyn and Barbara McMiller—came to court pursuant to subpoenas. The McMillers did not testify, however, because the case was continued on Bostic's motion to April 29, 1986. As they were leaving the courtroom, the McMillers each told a man who identified himself as a detective that Bostic was not the man who had shot Cotton. *Id.* at 8. Pienta was one of several detectives who was in court on February 21, 1986. Bostic was held in custody until his trial on April

29, 1986. After a one day bench trial, the trial judge acquitted Bostic and ordered him released.

Bostic sued the City and detectives Pienta and Marley pursuant to 42 U.S.C. § 1983 claiming civil rights violations. Both sides moved for summary judgment. The district court denied Bostic's motion for summary judgment and granted the defendants' motion for summary judgment. Bostic appeals.

## II. Analysis

We review a district court's grant of summary judgment *de novo.* We accept all facts and inferences in the light most favorable to the non-moving party. Where the pleadings, depositions, answers to interrogatories, affidavits, if any, and admissions on file show that there is no genuine issue of material fact, the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Vukadinovich v. Board of School Trustees,* 978 F.2d 403, 408 (7th Cir.1992).

### A. *Post-Arrest Detention*

Bostic complains that the defendants violated his Fourth Amendment rights when, on July 3, 1985, they arrested him without a warrant and kept him in custody for more than 48 hours without a judicial probable cause determination.[1] We disagree.

In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held "that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Id.* at 114, 95 S.Ct. at 863. This judicial determination, the Court stated, must be "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this deter-

---

1. The Fourth Amendment requires that

   [t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized.

   U.S. Const. amend. IV.

mination must be made by a judicial officer either before or promptly after arrest. *Id.* at 125, 95 S.Ct. at 868. The Court has recently clarified what it meant in *Gerstein* by "promptly after arrest." "[A] jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" *City of Riverside v. McLaughlin,* —— U.S. ——, ——, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991). The Court in *Riverside* established 48 hours as the point at which the burden of proof shifts. If an arrested individual does not receive a probable cause determination within 48 hours, "the arrested individual does not bear the burden of proving unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." *Id.* The Court cautioned that this is not a rigid standard for courts to apply blindly.

> In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

*Id.*

■ In this case, Bostic's detention was not unreasonable. The parties do not dispute that he was released at 1:30 a.m. on July 5, 1985. Under *Riverside,* Bostic bears the initial burden of persuasion. He must show that he was arrested by 1:30 a.m. on July 3, 1985 to shift that burden to the defendants. Once he establishes that more than 48 hours elapsed, the burden shifts to the defendants to show that his detention was reasonable. *Id.* At his deposition, Bostic stated that he went to the police station at 12:35 a.m. on July 3, 1985.

Bostic Dep. at 216. He said that he was taken to a room where he talked with Detective Pienta and his partner for "roughly, about half an hour." *Id.* He did not say, however, how much time elapsed between 12:35 and the time he went to speak with Pienta. When asked if he recalled what time it was when he went into the room with Pienta, Bostic answered, "No sir. No, I don't even know the time." *Id.* Bostic claims that after his approximately half hour talk with Pienta, he was locked in a room. Bostic thus presents no evidence that he was arrested before 1:30 a.m. on July 3, 1985. Therefore, under *Riverside,* he retains the burden of proving that his detention was unreasonable. *Id.*

■ He has not satisfied that burden. Allowing for the "substantial degree of flexibility" required by *Riverside,* we note that Bostic was arrested late at night when it is likely that no magistrate was readily available. The police arrested Bostic only after a witness identified him as Cotton's murderer. After the arrest, the police acted with reasonable promptness to complete the investigation, rather than releasing a suspected murderer without charges. The Fourth Amendment, as interpreted in *Gerstein* and *Riverside,* requires no more. Bostic's detention after his July 3, 1985 arrest was not unlawful.

### B. *August 5, 1985 Arrest*

■ After the police released Bostic on July 5, 1985, they continued to investigate the Cotton murder. On August 5, 1985, believing they had sufficient evidence to prosecute, the police arrested Bostic. Bostic claims that the August 5, 1985 arrest was illegal because the defendants did not have probable cause. We disagree.

■ For an arrest to be constitutionally valid, it must be made with probable cause. Although probable cause requires more than mere suspicion, it does not require that the evidence at the time of arrest be sufficient to prove guilt beyond a reasonable doubt. *Warlick v. Cross,* 969 F.2d

303, 306 (7th Cir.1992); *Hughes v. Meyer,* 880 F.2d 967 (7th Cir.), *cert. denied,* 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1989). Rather, probable cause exists if, at the moment of the arrest, the facts and circumstances within the knowledge of the police officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the petitioner had committed or was committing an offense. *Hunter v. Bryant,* — U.S. —, —, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142 (1964); *Warlick,* 969 F.2d at 306; *United States v. Burrell,* 963 F.2d 976, 986 (7th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 357, 121 L.Ed. 270 (1992).

Between the time of Bostic's release and his second arrest on August 5, 1985, they gathered more evidence that suggested Bostic might have killed Cotton. At the time of the July 3 arrest, they already had one person, Lisa Hodges, who claimed to have seen Bostic shoot Cotton. After Bostic's release, another witness, Steve Burks, identified Bostic as having had an argument with Cotton the night Cotton was killed. Appellees' Brief at 13. So, by the August 5 arrest, the police had two witnesses incriminating Bostic (Hodges and Burks), had found an empty holster in Bostic's apartment, and also knew that Bostic had called in sick the morning after the shooting, which was unusual. *Id.* at 28. Further, two other eyewitnesses, William Hampton and Ronald Walton, picked Bostic out of a lineup as the man who had argued with Cotton on the night of the murder. *Id.* Given the evidence against Bostic at this point, we conclude that a prudent person could have believed that Bostic killed Cotton. Clearly, therefore, probable cause existed to arrest Bostic on August 5, 1985.

### C. *The McMiller Evidence*

█ Bostic contends that defendant Pienta heard Barbara and Evelyn McMiller █

state that Bostic was not the person who had murdered Cotton. He claims that Pienta had a duty to come forward with this exculpatory evidence and that, by not doing so, Pienta breached that duty. Appellant's Brief at 13–14. Bostic, however, produces no evidence that Pienta was the detective to whom the McMillers spoke. He merely alleges that Pienta was in the room, with several other detectives, when the McMillers made their comments that Bostic was not the man who killed Cotton.

We note that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See also, Fisher v. Transco Servs.-Milwaukee, Inc.,* 979 F.2d 1239, 1242 (7th Cir. Nov. 17, 1992). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511. In this case, the evidence is barely colorable. Bostic only alleges that Pienta was one of several detectives in the same room with the McMillers. This does not defeat defendants' motion for summary judgment.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.