W. Foster SELLERS, Plaintiff–Appellant,

v.

Gary L. HENMAN, L. Knowles, D. Featherston, et al., Defendants–Appellees.

No. 93–1485.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 18, 1994.

Decided Nov. 18, 1994.

Willie Foster Sellers, Wynne Farm Unit, Huntsville, TX, for Willie Foster Sellers.

Gerard B. Schneller, Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, for Gary L. Henman.

Richard H. Lloyd, Asst. U.S. Atty., Crim. Div., Fairview Heights, IL, for L. Knowles, D. Featherston, M.D., W. Scott, Harvey Brooks, Don B. Valles, L.E. Madigan, Jenny S. Nelson.

Before POSNER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

POSNER, Chief Judge.

Sellers, an inmate in a Texas state prison, brought this suit seven years ago against officials of the federal prison at Marion, Illinois, where he was then imprisoned, claiming they had violated his constitutional rights. *Bivens v. Six Unknown, Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The district court granted summary judgment for the defendants and dismissed the suit. Sellers's appeal claims that he was not given a reasonable opportunity to submit affidavits in response to those the defendants had filed in support of their motion for summary judgment. Sellers makes two arguments, one of which has merit. The unmeritorious argument is that he did not have to file his counteraffidavits until the district court ruled on his motion to strike the defendants' affidavits on the ground that they did not comply with Fed.R.Civ.P. 56. No rule entitles a litigant to proceed in that way. *Manetas v. International Petroleum Carriers, Inc.,* 541 F.2d 408, 413 (3d Cir.1976). Rule 12(a)(4)(A) allows a party that files a motion to strike a pleading to delay filing his responsive pleading until ten days after the motion is denied, but an affidavit is not a pleading, or a counteraffidavit a responsive pleading, so the rule is not applicable. Sellers could have asked the district court for an extension of time within which to file his counteraffidavits, but he could not arrogate the decision on timing to himself on the basis of his personal views of optimal procedure. Which is not to say that his motion to strike had no merit. One of the defendants' key affidavits was unsigned and hence unsworn, and therefore did not comply with Rule 56(e); cf. *DeBruyne v. Equitable Life Assurance Society,* 920 F.2d 457, 471 (7th Cir.1990), so we do not understand the district court's refusal to strike it.

■ Sellers's second argument is better; it is that he did not receive the notice, required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir.1982), in all cases involving unrepresented prisoner plaintiffs, that failure to file

counter-affidavits might result in the dismissal of the suit—that he could not rest on his complaint once the defendants moved for summary judgment and supported the motion with affidavits or other evidence. But we do not reverse for failure to adhere to *Lewis v. Faulkner* unless there is reason to believe that the plaintiff was prejudiced by the failure, that is, that he could have established that there was a genuine issue of material fact, precluding the grant of summary judgment, if he had had a reasonable opportunity to submit affidavits. *Timms v. Frank,* 953 F.2d 281, 286 (7th Cir.1992). So let us turn to that question.

█ Sellers claims that the conditions of his confinement at Marion constituted the infliction on him of cruel and unusual punishment, in violation of the Eighth Amendment. Several of the specific complaints—that his cell was too small for him to exercise in, that an hour a day of exercise outside the cell was too little, that he should have been given an extra mattress, and that the prison doctors used poor medical judgment in taking him off a drug for reducing his cholesterol and in the way they administered his insulin (he is an insulin-dependent diabetic)—plainly have no merit in light of the realities of prison administration and previous decisions. E.g., *Whitley v. Albers,* 475 U.S. 312, 321–22, 106 S.Ct. 1078, 1085–86, 89 L.Ed.2d 251 (1986); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Caldwell v. Miller,* 790 F.2d 589, 601 (7th Cir.1986). So we shall not discuss them. More substantial are his complaints that he was taken off his special diabetics' diet in retaliation for his complaints and that the diet he was put on has too few calories and too much saturated fat to be healthful for him. Diabetics are prone to coronary artery disease, and Sellers has already had a heart attack and a bypass operation; hence his concern with the fat in his diet. Diabetics are also prone to dangerous weight losses, so they need a diet with "sufficient calories." 3A *Attorneys' Textbook of Medicine* ¶ 74.71(2a), p. 74–36 (Roscoe N. Gray and Louise J. Gordy eds., 3d ed. 1994). Sellers claims he needs 2400 calories a day, which seems a little high, see *id.,* ¶ 74.21(2a), at p. 74–37 (Tab. I), but that is hardly a matter that can be resolved on this record.

The defendants' affidavit attesting the adequacy of Sellers's diet is the unsigned affidavit; it has no evidentiary significance, and anyway Sellers is entitled to an opportunity to present counteraffidavits.

█ Of course merely to establish that he has been denied appropriate medical treatment and diet would not prove that Sellers had been subjected to cruel and unusual punishment. Negligence is not actionable under the Eighth Amendment. *Duckworth v. Franzen,* 780 F.2d 645, 652–53 (7th Cir. 1985). Ordinary medical malpractice, therefore—malpractice that consists of negligent treatment—is not cruel and unusual punishment. *Estelle v. Gamble, supra,* 429 U.S. at 106, 97 S.Ct. at 292. Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health—that is, only if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan,* ── U.S. ──, ──, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

It is vital to keep negligence and deliberate indifference apart. It may be, as quite a large number of cases state, such as *French v. Owens,* 777 F.2d 1250, 1254 (7th Cir.1985); *Wellman v. Faulkner,* 715 F.2d 269, 272 (7th Cir.1983); *Kelley v. McGinnis,* 899 F.2d 612, 616–17 (7th Cir.1990), and *Harris v. Thigpin,* 941 F.2d 1495, 1505 (11th Cir.1991), that repeated acts of negligence are some evidence of deliberate indifference—although an alternative explanation is that the prison may lack the resources to adhere to a reasonable standard of care, and it is an open question whether that can be deliberate indifference. See *Wilson v. Seiter,* 501 U.S. 294, 301–02, 111 S.Ct. 2321, 2325–26, 115 L.Ed.2d 271 (1991). And if it can, the prison officials, being unable to adhere to the reasonable standard of care, may have an immunity defense. *Birrell v. Brown,* 867 F.2d 956, 958 (6th Cir.1989); cf. *K.H. v. Morgan,* 914 F.2d 846, 853–54 (7th Cir.1990).

█ It would be a great mistake, though, to infer from cases like *French* and *Wellman* that a series of purely negligent acts can be equated to an act of deliberate

indifference. If act *A* committed by the *X* prison shows negligence but not deliberate indifference, and *B* the same, and likewise *C*, the prison is not guilty of deliberate indifference. The only significance of multiple acts of negligence is that they may be evidence of the magnitude of the risk created by the defendants' conduct and the knowledge of the risk by the defendants. *Farmer v. Brennan, supra,* —— U.S. at —— ——, 114 S.Ct. at 1981–82. If the cases we have cited meant to go further, they trip over the clear statement in *Farmer* that prison officials must *know* they are subjecting the plaintiff to an *excessive* risk before they can be found to be violating the Eighth Amendment. The more negligent acts they commit in a circumscribed interval, the likelier it is that they know they are creating *some* risk, and if the negligence is sufficiently widespread relative to the prison population the cumulative risk to an individual prisoner may be excessive. But, to repeat, the presence of multiple acts of negligence is merely evidentiary; it is not an alternative theory of liability. The occasional case that says it is, such as *Williams v. O'Leary,* 805 F.Supp. 634, 638 (N.D.Ill. 1992), is simply wrong—wrong under *Farmer,* and wrong under the decisions of this court that anticipated *Farmer,* such as *Duckworth v. Franzen, supra,* and *McGill v. Duckworth,* 944 F.2d 344, 349 (7th Cir.1991).

Yet while Sellers is not permitted to bootstrap his way to a judgment by stringing together a bunch of separate acts of mere negligence, if he can prove that the defendants have deliberately withheld medical treatment and dietary accommodation that he needs—and that they know he needs—to avoid a diabetic crisis or another heart attack, he is entitled to a judgment.

■ He makes one more, unrelated claim, a claim almost literally unsavory. To bolster his complaint about the inadequacy of his diet, he put some "meat gravy soup" into a plastic bag and tendered it to a guard for shipment to the district court. En route the bag broke, and the soup was lost. He argues that the prison officials "intentionally mashed" the bag, destroying evidence that he needed, thus impeding the constitutionally guaranteed access to the courts that was recognized in *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The district court had previously informed Sellers, however, that it would not accept meat as evidence. Whether this ruling was right or wrong, it moots his complaint about the destruction of the evidence. What was destroyed would never have made it into evidence. We suppose an argument could be made that Sellers was entitled to have the gravy lodged in the court, since he might challenge the district court's ruling on appeal—perhaps ask this court to examine the evidence. But this discussion is becoming ridiculous. The soup wouldn't have kept that long. This claim was properly dismissed, but the Eighth Amendment claim was dismissed prematurely.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.