**George Charles ROBERTS, Jr., Plaintiff,**

v.

**Ronald SAMARDVICH, Gregory Goodman, Steven Gallegos, Charles Stang, Frank Egolf, Mark Smith, Gary Warre, Mike Taylor, Matthew Hamilton, Nell Hayes, Charles Wright, and Charles Motley, in their individual and official capacities, Defendants.**

No. 3:93cv0760 AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 21, 1995.

**598**

George Charles Roberts, Jr., Westville, IN, pro se.

Seth M. Lahn, Suzann W. Lupton, Office of Indiana Attorney General, Indianapolis, IN, for defendants.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

The complaint in this case was filed by this *pro se* plaintiff, George Charles Roberts, an inmate at the Maximum Control Complex, in Westville, Indiana, purporting to state a claim under 42 U.S.C. § 1983, and invoking this court's federal question subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(3). The motion for summary judgment filed by the defendants, demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). Magistrate Judge Pierce has filed his Report and Recommendation on October 26, 1995. He deserves high praise for the very careful and thorough manner in which he has approached this case. Magistrate Judge Pierce is entirely correct that damage claims against these defendants in their official capacities are foreclosed by the Eleventh Amendment of the Constitution of the United States. In their official capacities, each of the state defendants are entitled to immunity for claims for money damages under the Eleventh Amendment to the Constitution of the United States. The Eleventh Amendment states as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

*See Kashani v. Purdue University*, 813 F.2d 843 (7th Cir.), *cert. denied*, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); *Owen v. Lash*, 682 F.2d 648 (7th Cir.1982); *Sheets v. Indiana Department of Corrections*, 656 F.Supp. 733 (S.D.Ind.1986). For recent authority consistent with *Kashani*, 813 F.2d at 843, see *Shelton v. Trustees of Indiana University*, 891 F.2d 165 (7th Cir.1989). *See also Kroll v. Board of Trustees of the University of Illinois*, 934 F.2d 904 (7th Cir.1991); *Cosby v. Jackson*, 741 F.Supp. 740 (N.D.Ill.1990), and *Rodenbeck v. Indiana, Leaking Underground Storage Tank Div. etc.*, 742 F.Supp. 1442 (N.D.Ind.1990). Any and all damage claims against the defendants in their official capacities are now **DISMISSED** under the mandates of the Eleventh Amendment of the Constitution. Thus, the defendants are immune from damages claims in their official capacities, but that does not end the story here. Given the seminal case of *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), this plaintiff is going to be hard pressed to make any kind of viable claim against the defendant Wright. To that extent, Magistrate Judge Pierce is again correct that that complaint should be dismissed by summary judgment in favor of the defendant Charles Wright and against the plaintiff. Each party will bear its own costs.

Certainly one of the beginning points for any case under 42 U.S.C. § 1983 is *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Beyond that, a prisoner must in this particular case invoke the present teaching under the Eighth Amendment of the Constitution of the United States which is bound up in the concept of deliberate indifference. This concept first saw the judicial light of day in the Eighth Amendment context in *Estelle v. Gamble*, 429 U.S.

97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and most recently in *Farmer v. Brennan,* — U.S. —, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). There is now a considerable bundle of progeny of *Farmer* in this district, including *Sellers v. Henman,* 41 F.3d 1100 (7th Cir.1994), and *Del Raine v. Williford,* 32 F.3d 1024 (7th Cir.1994). It is not an easy area of the law to deal with either at the Court of Appeals or the district court level, and Magistrate Judge Pierce reflects those difficulties in his carefully crafted 19–page recommendation. He is entirely correct with reference to summary judgment being granted against the defendant Charles Wright, Ronald Samardvich, Frank Egolf, Mark Smith, Gary Ware, Matthew Hamilton, Gregory Goodman, Steven Gallegos, Charles Stang, and Nell Hayes.

The excessive force claim against defendant Frank Egolf appears to present issues of fact that under the Seventh Amendment of the Constitution of the United States must be resolved by a jury as a trier of fact. This court will seriously consider attempting to secure appointed counsel for any such trial and will likely schedule the same in Lafayette, Indiana as soon as the court's calendar permits. **IT IS SO ORDERED.**

### REPORT AND RECOMMENDATION

PIERCE, United States Magistrate Judge.

The plaintiff, George Charles Roberts, Jr., brings this action under 42 U.S.C. § 1983 against employees of the Maximum Control Complex ("MCC") in Westville, Indiana, in their official and individual capacities, alleging that they violated his Eighth Amendment rights by excessive use of force and deliberate indifference to his serious medical needs. Roberts alleges that defendants Goodman and Samardvich used force against him without provocation and that defendant Gallegos observed the use of force but failed to intervene. He alleges that defendants Egolf, Smith, Hamilton, and Ware, supervised by defendant Stang, used excessive force against him during a cell extraction. Roberts alleges that defendant Hayes blocked his efforts to secure medical care and that defendant Wright allowed the excessive use of force against him and prisoners at the MCC (Compl. ¶ IV.).

This cause is presently before the court on a motion for summary judgment filed by defendants Charles Wright, Ronald Samardvich, Frank Egolf, Mark Smith, Gary Ware, Matthew Hamilton, Gregory Goodman, Steven Gallegos, Charles Stang, and Nell Hayes (collectively "the defendants"), and the plaintiff's motion to reschedule the jury trial. For the reasons which follow, the court will recommend that the defendants' motion be denied with respect to the excessive use of force claim against defendant Egolf, and granted in all other respects. The court will also recommend that the plaintiff's motion to reschedule the jury trial be granted.

### *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for the motion, and identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This burden "may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. Rule 56 imposes no requirement on the moving party to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* at 323, 106 S.Ct. at 2549; *John Hancock Mut. Life Ins. Co. v. Weisman,* 27 F.3d 500, 503 (10th Cir.1994); *Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 201 n. 3 (7th Cir.1994); *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990).

Once a properly supported motion for summary judgment is made, the party that

bears the burden of proof on a particular issue at trial cannot resist the motion by merely resting on its pleadings. *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir.1994). Rather, as Fed.R.Civ.P. 56(e) makes clear, "[T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994); *Cleveland v. Porca Co.,* 38 F.3d 289, 295 (7th Cir.1994); *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir.1994).

■■■ "[T]he plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Jean v. Dugan,* 20 F.3d 255, 260 (7th Cir.1994). The nonmoving party must do more than demonstrate "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted); *Griffin v. Air Line Pilots Ass'n, Intern.,* 32 F.3d 1079, 1084 (7th Cir.1994); *Bostic v. City of Chicago,* 981 F.2d 965, 969 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3038, 125 L.Ed.2d 725 (1993). Conclusory statements or indications of opinion or belief offered without any factual support are also insufficient to create a genuine issue of fact. *Rand v. CF Indus., Inc.,* 42 F.3d 1139, 1146 (7th Cir.1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors...."); *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992); *Covalt v. Carey Canada, Inc.,* 950 F.2d 481 (7th Cir. 1991); *Visser v. Packer Eng'g Assocs., Inc.,* 924 F.2d 655, 659–60 (7th Cir.1991); *Davis v. City of Chicago,* 841 F.2d 186, 189 (7th Cir. 1988).

■■■ "Supporting materials designed to establish issues of fact in a summary judgment proceeding 'must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits.'" *Friedel v. City of Madison,* 832 F.2d 965, 970 (7th Cir.1987) (quoting *Martz v. Union Labor Life Ins. Co.,* 757 F.2d 135, 139 (7th Cir.1985)). Supporting materials, in other words, must be "of evidentiary quality—either admissible documents or attested testimony, such as that found in depositions or in affidavits—demonstrating the existence of a genuine issue of material fact." *Winskunas v. Birnbaum,* 23 F.3d 1264, 1267 (7th Cir.1994). While "[t]he evidence need not be in admissible *form,* ... it must be admissible in *content,* in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit, would make the evidence admissible at trial." *Id.* at 1267–68 (Emphasis in original); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. In determining whether there is a genuine issue of material fact, the court must construe all facts in the light most favorable to the party opposing the motion and draw all inferences in favor of that party. *NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 234 (7th Cir. 1995), *cert. denied,* —— U.S. ——, 115 S.Ct. 2249, 132 L.Ed.2d 257 (1995); *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1440 (7th Cir.1992). It must be noted, however, that not every factual dispute creates a barrier to summary judgment. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Tolle,* 23 F.3d at 178; *Derrico v. Bungee Int'l Mfg. Co.,* 989 F.2d 247, 250 (7th Cir.1993); *First Indiana Bank v. Baker,* 957 F.2d 506, 508 (7th Cir.1992). Moreover, "[a] genuine issue for trial only exists where there is sufficient evidence favoring the nonmovant for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511; *Unterreiner v. Volkswagen of America,* 8

F.3d 1206, 1210 (7th Cir.1993). The inquiry involved in ruling on the motion for summary judgment implicates the substantive evidentiary standard of proof, for example, preponderance of the evidence, that would apply at trial. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Jean,* 20 F.3d at 263.

 Affidavits presented in opposition to a motion for summary judgment must be based upon personal knowledge; a statement merely indicating that a purported affidavit is based upon "information and belief" is insufficient. *Price v. Rochford,* 947 F.2d 829, 832–33 (7th Cir.1991); *Visser,* 924 F.2d at 659–60; *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir.1989). Rule 56(e) requires that any such affidavits "set forth such facts as would be admissible in evidence, and ... show affirmatively that the affiant is competent to testify to the matters stated therein." Inadmissible hearsay contained in affidavits or other discovery materials such as interrogatories or depositions may not be considered. *Horta v. Sullivan,* 4 F.3d 2, 8–9 (1st Cir.1993) (newspaper article which contained "hearsay within hearsay" could not be considered); *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1264 (7th Cir.1993) ("We do not consider hearsay statements that are otherwise inadmissible at trial, and this limitation applies to deposition testimony based on inadmissible hearsay."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 584–85 (6th Cir.1992) (affidavit which contained nothing more than rumors, conclusory allegations and subjective beliefs could not be considered); *Cormier v. Pennzoil Exploration & Prod. Co.,* 969 F.2d 1559, 1561 (5th Cir.1992); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990) (refusing to consider interrogatory answer which contained hearsay); *Pfeil v. Rogers,* 757 F.2d 850, 862 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); *Liberty Leasing Co. v. Hillsum Sales Corp.,* 380 F.2d 1013, 1015 (5th Cir.1967) (deposition containing inadmissible hearsay properly disregarded); *Amcast Indus. Corp. v. Detrex Corp.,* 779 F.Supp. 1519, 1526 (N.D.Ind.1991), *aff'd in part, rev'd in part, remanded,* 2 F.3d 746 (7th Cir.1993), *and*

*cert. denied,* —— U.S. ——, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994).

### The Undisputed Facts

Plaintiff, George Charles Roberts, Jr., is and was during the relevant time period, an inmate at the MCC in Westville, Indiana. Defendants were employees of the MCC during the relevant time period.

On October 10, 1993, defendant Goodman was securing Roberts for transport from the recreation area to his cell (Goodman Decl. ¶ 1–2), at which time Roberts became belligerent and complained that his recreation time had been cut short (Goodman Decl. ¶ 2; Gallegos Decl. ¶ 2). He began to turn to face defendant Goodman when Goodman ordered him to turn around and face the opposite direction (Goodman Decl. ¶ 2). Nevertheless, Roberts persisted in his behavior and shouted at Goodman (Goodman Decl. ¶ 3). Goodman grabbed Roberts' arms and pushed him up the stairs toward his cell (Goodman Decl. ¶ 4; Gallegos Decl. ¶ 3). Defendants Goodman and Samardvich then moved Roberts into his cell and left him there cuffed, shackled at the feet, and secured to the cell door by a lead (Goodman Decl. ¶ 7; Gallegos Decl. ¶ 7). Roberts continued to act in a belligerent manner (Stang Decl. ¶ 2). Defendant Gallegos observed Goodman and Samardvich moving Roberts and did not see them apply any unnecessary force (Gallegos Decl. ¶ 8).

When advised of the incident, Lt. Newsom ordered a cell extraction (Stang Decl. ¶ 2). Defendant Stang led the five-man cell extraction team to Roberts' cell. When he looked into the cell, defendant Stang saw that Roberts appeared to be cuffed, but had broken away from the lead that had secured him to the door. Defendant Stang could not determine whether he was still secured in his leg irons (Stang Decl. ¶ 3). The extraction team entered the cell, removed Roberts, moved him to another cell, and placed him in four-way leather restraints (Stang Decl. ¶ 4; Gallegos Decl. ¶ 7). At some point during the extraction, Roberts apparently received a cut on the right side of his head (Henrick

Decl. ¶ 4a).[1]

Roberts is approximately 6 feet tall and weighs approximately 230 pounds (Roberts Decl. ¶ 5).[2]

Roberts requested medical attention, and Nurse Vicky Johnson was called to the cell (Stang Decl. ¶ 5; Henrick Decl. ¶ 4). She observed a small laceration, approximately one inch in length on the right side of the temporal area of Roberts' head. She cleaned the laceration with hydrogen peroxide and stopped the bleeding. Roberts complained of pain in his right heel and Nurse Johnson noticed blood on his sock. She removed his sock and observed a small puncture wound to his right heel that she then cleaned with hydrogen peroxide. Nurse Johnson observed that Roberts was conscious and did not complain of any other symptoms. Nurse Johnson returned to examine him later that day and applied a bandage to his right heel. She observed that the laceration to Roberts' head was not bleeding. Medical staff saw and treated Roberts two days later for both his head and heel (Henrick Decl. ¶ 4).

### Disputed Facts

The parties dispute whether Roberts pulled away from defendant Goodman when he was being secured for transport from the recreation area (Goodman Decl. ¶ 3; Gallegos Decl. ¶ 4; Roberts Decl. ¶ 6).

Roberts contends that a material issue of fact exists as to whether defendants Goodman, Stang, and Gallegos were aware of any injuries he sustained during the cell extraction, arguing that all three defendants were present when Nurse Johnson treated him. No genuine issue of material fact exists, however. None of those defendants denied that Roberts received medical treatment for his injuries. Neither defendant Stang nor defendant Gallegos denied an awareness that Roberts received *any* injuries during the cell extraction; rather, they stated that they were "unaware of any *significant* injuries" sustained by Roberts (Stang Decl. ¶ 8; Galle-

gos Decl. ¶ 10) (emphasis added). Only defendant Goodman denied an awareness of *any* injuries received by Roberts during the cell extraction (Goodman Decl. ¶ 10), and whether Goodman was aware that he sustained any injuries is not a material fact.

### Discussion
### Official Capacity Claims

The defendants contend that the Eleventh Amendment bars Roberts' action for damages against them in their official capacities. The court agrees. The Eleventh Amendment bars suits for money damages against state officials in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Moore v. Indiana,* 999 F.2d 1125, 1128–29 (7th Cir.1993); *Meadows v. Indiana,* 854 F.2d 1068, 1069 (7th Cir.1988); *Ridlen v. Four County Counseling Center,* 809 F.Supp. 1343, 1358 (N.D.Ind.1992).

Indiana has not waived its immunity, *Meadows,* 854 F.2d at 1069, and Congress has not abrogated the states' immunity in § 1983 cases. *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979); *Hutto v. Finney,* 437 U.S. 678, 700, 98 S.Ct. 2565, 2578–79, 57 L.Ed.2d 522 (1978); *Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 731 (7th Cir.1994); *Thomas v. Brown,* 824 F.Supp. 160, 162–63 (N.D.Ind. 1993). Furthermore, neither states nor state officials in their official capacities are "persons" within the meaning of § 1983. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Accordingly, the court will recommend that summary judgment be granted the defendants in their official capacities.

### Personal Involvement

The defendants contend that Roberts cannot prove liability as to defen-

---

1. Roberts stated that defendant Egolf hit him on the head near the temporal area giving him the laceration (Roberts Decl. ¶ 9).

2. Defendant Goodman estimated that Roberts is approximately 5 feet 10 inches tall and weighs 250 pounds (Goodman Decl. ¶ 6). Any minor discrepancy in Roberts' size does not create a genuine issue of material fact.

dant Wright. The court agrees. "An individual cannot be held liable in a § 1983 action unless he caused or participated in the alleged constitutional deprivation." *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38, 73 L.Ed.2d 396 (1982); *Moore v. Indiana*, 999 F.2d 1125, 1129 (7th Cir.1993); *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986). A "causal connection, or an affirmative link" must exist between the deprivation and the defendant's conduct. *Id.* An official cannot be held liable under § 1983 merely because his subordinates violated a plaintiff's constitutional rights. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453–54, 70 L.Ed.2d 509 (1981) (no claim under § 1983 on a theory of respondeat superior); *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). None of the evidence when viewed in the light most favorable to Roberts would support a finding or inference that Wright caused or participated in the alleged deprivations of Roberts' constitutional rights. Indeed, the complaint does not even allege the personal involvement of Wright in any of the alleged constitutional violations. That Wright was the Superintendent at the MCC does not constitute personal involvement. Therefore, the court will recommend that summary judgment be granted as to defendant Wright.

## Section 1983 and the Eighth Amendment

To prevail under § 1983, a plaintiff must prove a violation of a constitutional right by a person or persons acting under color of state law. 42 U.S.C. § 1983 (West 1985); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1249 (7th Cir.1994); *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir.1993). Absent a violation of a constitutional right, the plaintiff cannot prevail on his claim under § 1983. *Graham v. Connor*, 490 U.S. 386, 393, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (Section 1983 "is not itself a source of substantive rights") (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694 n. 3, 61 L.Ed.2d 433 (1979)); *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1349 (7th Cir.1985). The threshold inquiry, therefore, is whether Roberts can prove that each defendant deprived him of a constitutional right.

The Eighth Amendment prohibits "cruel and unusual punishment" and applies to the states through the Fourteenth Amendment. When evaluating claims for cruel and unusual punishment, the court makes a two-part inquiry: (1) whether the defendants acted with a sufficiently culpable state of mind (subjective component), and (2) whether, in light of "contemporary standards of decency," the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation (objective component). *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2323–24, 115 L.Ed.2d 271 (1991); *Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir.1994); *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir.1994).

## Excessive Use of Force

In the excessive force context, the two components collapse into a single inquiry because " '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency ... are always violated.' " *Thomas*, 20 F.3d at 301 (quoting *Hudson*, 503 U.S. 1, 112 S.Ct. 995, 1000 (1992)). The ultimate test, as set forth in *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1084–85, 89 L.Ed.2d 251 (1986), is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir.1994); (quoting *Hudson*, 503 U.S. at 7, 112 S.Ct. at 999); *see also Del Raine v. Williford*, 32 F.3d 1024, 1031 (7th Cir.1994); *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir.1994). The standard is strict and sets a fairly high threshold. *Lunsford*, 17 F.3d at 1581. When determining whether the force used was excessive, the court should consider the need for force, the threat to the safety of the staff and inmates, and the nature and extent of any injury inflicted on the prisoner. *Lunsford*, 17 F.3d at 1581. (citing *Hudson*, 503 U.S. at 7, 112 S.Ct. at 999; *Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085).

■ Not every malevolent touch by a prison guard constitutes cruel and unusual punishment. *Hudson,* 503 U.S. at 7, 112 S.Ct. at 999. Conduct involving *de minimis* force does not violate the Eighth Amendment's prohibition on excessive force. *See Hudson,* 503 U.S. at 8, 112 S.Ct. at 1000. *Lunsford* provides an example of the use of *de minimis* force. In *Lunsford,* the court affirmed the grant of summary judgment in favor of prison officials, holding that the prison officials did not use excessive force in pouring a bucket of water over the head of a prisoner already standing in ankle-deep water. 17 F.3d at 1582. The prisoner alleged that he was twice hit in the head by a bucket, causing him daily headaches, but not causing him to seek medical attention or preventing him from working. *Id.* By contrast, in *Thomas,* the court held that an inmate made a *prima facie* case of excessive force. The inmate established that while he was held down by at least nine people, a guard punched him in the mouth with clenched fists and told him to "shut up." After the incident, the inmate complained that he "hurt all over," and had to have four teeth removed the next day. The evidence showed that the punch was not necessary. 20 F.3d at 302.

■ The defendants maintain that Goodman and Samardvich did not use excessive force. The court agrees. The evidence demonstrates that when Roberts was removed from the recreation area he became belligerent, turned toward defendant Goodman, and refused to follow Goodman's orders to turn around. Roberts' arms were grabbed, he was pushed up the stairs toward his cell, and placed in his cell cuffed, shackled, and secured to the door. Throughout the incident, Roberts continued to act belligerently. Roberts states that he did not pull away from Goodman at that time, but he does not dispute that he became belligerent, refused to obey Goodman's orders to turn around, and continued to act belligerently. Although Goodman and Samardvich used force against Roberts when moving him from the recreation area to his cell, given Roberts' physical size, his belligerence, and his refusal to comply with Goodman's orders, the amount of force used was not excessive.

Even assuming that Roberts sustained the cut to his right heel during his removal, there is no evidence that either Goodman or Samardvich acted maliciously or sadistically to inflict the cut or to otherwise harm Roberts. Their actions in removing and moving Roberts involved only *de minimis* force, as in *Lunsford.* The evidence even when viewed in the light most favorable to Roberts does not demonstrate that Goodman or Samardvich applied force maliciously or sadistically to cause harm to Roberts. Therefore, the court will recommend that summary judgment be granted defendants Goodman and Samardvich on Roberts' claim of excessive force against them.

■ The defendants contend that the extraction team did not use excessive force. The court agrees. The evidence demonstrates that a cell extraction was ordered because of the incident between Roberts and Goodman and Samardvich, including Roberts' continued belligerence. Defendant Stang led the five-man cell extraction team to Roberts' cell, looked into the cell and saw that although Roberts appeared to be cuffed, he had broken away from the lead that had secured him to the door. Defendant Stang could not determine whether he was still secured in the leg irons. The extraction team entered the cell, removed Roberts from the cell, moved him to another cell, and placed him in four-way leather restraints.

■ The cell extraction, the removal to the second cell, and the restraining of Roberts were recorded on a videotape. The court has reviewed that videotape. Although it is not possible to see everything that took place inside the cell during the extraction,[3] the videotape shows no beating or hitting inflicted upon Roberts and shows no excessive force directed toward him. However, Roberts states that defendant Egolf hit him on the head causing a laceration approximately one inch in length. Although the

---

3. The cameraman was not the first person inside the cell and the camera making the videotape was partially blocked for a period of time.

videotape shows that Roberts was yelling, often times yelling obscenities, throughout most of the cell extraction, it does not show any physical resistance on behalf of Roberts.

Viewing the evidence in the light most favorable to Roberts, the court must assume that defendant Egolf hit him in the head. Although the nature and extent of injury to Roberts, as in *Lunsford,* was not significant—he received a laceration of approximately one inch in length that stopped bleeding within less than 20 minutes,[4] but as in *Thomas,* Roberts was struck in the head. The court cannot conclusively find that defendant Egolf's use of force in hitting Roberts in the head was *de minimis.* Although there is no direct evidence that Egolf maliciously and sadistically hit Roberts in the head to cause him harm, viewing the evidence in the light most favorable to Roberts, the evidence could support such a reasonable inference.

Defendant Egolf's use of force falls somewhere between the *de minimis* use of force in *Lunsford* and the use of force in *Thomas.* The court cannot conclusively determine that in hitting Roberts in the head, Egolf's use of force was a good-faith effort to maintain or restore discipline. Therefore, the court will recommend that summary judgment be denied defendant Egolf.

### Deliberate Indifference to Serious Medical Needs

■■■ The defendants maintain that none of them were deliberately indifferent to Roberts' injuries and that he was not denied appropriate medical care for a serious medical need. The court agrees. A plaintiff alleging inadequate medical care in violation of the Eighth Amendment must demonstrate that the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Farmer v. Brennan,* —— U.S. at ——, 114 S.Ct. at 1977; *Hudson v. McMillian,* 503 U.S. 1, 8–9, 112 S.Ct. 995, 999–1000, 117 L.Ed.2d 156 (1992); *Wilson,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2323–24 (1991); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "Deliberate indiffer-

ence" is "recklessness" in the criminal sense, *Farmer,* —— U.S. at ——, 114 S.Ct. at 1980, and exists only when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* —— U.S. at ——, 114 S.Ct. at 1979; *Williams v. O'Leary,* 55 F.3d 320, 324 (7th Cir.), *petition for cert. filed,* (U.S. Aug. 23, 1995) (No. 95–6090); *Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir.1994); *see also Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991). Deliberate indifference may be manifested by officials "in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05, 97 S.Ct. at 291.

■■■ Deliberate indifference to medical needs violates the Eighth Amendment only if the medical needs are serious. *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000 (citing *Estelle,* 429 U.S. at 103–04, 97 S.Ct. at 290–91); *Brownell v. Figel,* 950 F.2d 1285, 1291 (7th Cir.1991); *see also Hughes,* 931 F.2d at 428. When determining whether a medical need is "serious," the court should consider factors such as the severity of the medical condition, the potential harm that could result from a lack of medical care, and the actual harm caused by the lack of medical care. *See Burns v. Head Jailor of LaSalle County Jail,* 576 F.Supp. 618, 620 (N.D.Ill. 1984); *see also Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.1974), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974). A medical condition is "serious" if it may be "life threatening or pose[s] a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones,* 936 F.2d 971, 972 (7th Cir.1991).

■■■ It is undisputed that Roberts received medical treatment subsequent to receiving the laceration to his head and sustaining a puncture to his right heel. Upon Roberts' request for medical attention, Nurse

---

4. The videotape of the entire cell extraction, including treatment by Nurse Johnson, was approximately 20 minutes in length, and Nurse Johnson observed at the time she first treated Roberts that the laceration had stopped bleeding.

Johnson examined Roberts, cleansed and treated his head laceration and heel puncture, the only symptoms of which he complained. A few hours later, she returned, examined him, observed that the head laceration was not bleeding, and gave him a bandage for his heel. Two days later, Roberts was again seen and treated by medical staff for both his head and heel wounds. There is no evidence that any of the defendants intentionally denied or delayed Roberts' access to medical care or intentionally interfered with the medical treatment.

Moreover, the evidence, when viewed in the light most favorable to Roberts, does not support a finding or a reasonable inference that the head or heel injury constituted a serious medical need. Neither the laceration to the head nor the puncture to the heel was severe. Nurse Johnson described the one-inch laceration to the head as "small," and described the injury to the heel as a "small puncture wound." In treating both injuries, Nurse Johnson merely cleaned both wounds with hydrogen peroxide and gave Roberts a bandage for the heel puncture. The laceration bled for only a short time. Nor is there any evidence that either the laceration or puncture was either life threatening or posed a risk of needless pain or lingering disability. Indeed, the extent of treatment given by Nurse Johnson seems to suggest otherwise. The evidence would not support a finding or reasonable inference that Roberts' head or heel injuries were life threatening or posed a risk of needless pain or lingering disability if not treated at once.

The evidence, when viewed in the light most favorable to Roberts, would not support a finding or reasonable inference that any of the defendants acted with deliberate indifference to Roberts' serious medical needs. Therefore, the court will recommend that summary judgment be granted the defendants as to Roberts' claim of deliberate indifference to a serious medical need.

### Rescheduling the Jury Trial

Because resolution of the summary judgment motion has not resolved all claims against all defendants, the court will recommend that Roberts' motion to reschedule the jury trial be granted.

### Conclusion

For foregoing reasons, it is **RECOMMENDED** that:

(1) the motion for summary judgment filed by defendants Charles Wright, Ronald Samardvich, Frank Egolf, Mark Smith, Gary Ware, Matthew Hamilton, Gregory Goodman, Steven Gallegos, Charles Stang, and Nell Hayes be **DENIED IN PART** with respect to the excessive use of force claim against Frank Egolf, but **GRANTED** in all other respects; and

(2) the plaintiff's motion to reschedule the jury trial be **GRANTED**.

**ANY OBJECTIONS** to this report and recommendation must be filed with the Clerk of courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Lockert v. Faulkner*, 843 F.2d 1015 (7th Cir.1988); *Video Views, Inc. v. Studio 21 Ltd.*, 797 F.2d 538 (7th Cir.1986).

**SO ORDERED.**

Dated this 26th day of October, 1995.