**Derrick WILLIAMS, Plaintiff–Appellant,**

v.

**Michael O'LEARY, Clyde E. Nash, Leroy Banks, et al., Defendants–Appellees.**

**No. 94–1984.**

United States Court of Appeals, Seventh Circuit.

Argued April 11, 1995.

Decided May 25, 1995.

P. Scott Neville, Jr. (argued), Shirley Taylor Birts, Howse, Howse, Neville & Gray, Leonard Murray, Salone, Simmons & Murray, Chicago, IL, for plaintiff-appellant.

William K. Blanchard (argued), Office of the Atty. Gen., Civil Appeals Div., Chicago, IL, for defendants-appellees.

Before CUDAHY, ESCHBACH, and COFFEY, Circuit Judges.

ESCHBACH, Circuit Judge.

Derrick Williams was allegedly subjected to repeated acts of medical malpractice while he was an inmate at Joliet Correctional Center ("Joliet") and Stateville Correctional Center ("Stateville"). Contending that this amounted to a constitutional violation, Williams brought an action under 42 U.S.C. § 1983 against those responsible for his medical care. He now appeals from the district court's grant of a judgment as a matter of law on qualified immunity grounds in favor of two of the defendants, Dr. Arthur Brewer and Dr. George Kurian. We affirm.

I.

On January 7, 1986, Williams fractured his left femur in an automobile accident and a metal plate and screws were inserted into his leg to help the healing process. Unfortunately, when the metal plate and screws were removed on April 25, 1987, Dr. Michael Greenwald determined that Williams suffered from a chronic condition known as osteomyelitis, a bone infection which causes inflammation of the bone marrow and adjacent bone.

Williams entered Joliet in January 1988. In March, prison officials sought a consultation from Greenwald on Williams' condition and he advised them that Williams still suffered from osteomyelitis and should be treated with an antibiotic known as Duricef. When his condition did not improve, Williams was hospitalized on August 4, 1988 for intravenous antibiotic treatment. According to a culture report taken while Williams was in the hospital, his osteomyelitis appeared to be caused by an organism known as pseudomonas aeruginosa, a relatively uncommon cause

of osteomyelitis, accounting for no more than five to ten percent of the cases. Greenwald advised Joliet officials that he should now be treated with an antibiotic known as Ciprofloxacin, which is appropriate for the treatment of pseudomonas aeruginosa. However, after being returned to Joliet, Williams was never given Ciprofloxacin as prescribed. On August 22, 1988, Williams was transferred from Joliet to Stateville.

At Stateville, Williams was first examined by Dr. George Kurian, a staff physician, on August 23, 1988. According to Williams' medical records, he was examined by physicians on 24 separate occasions in 1989 and on 15 separate occasions in 1990. Dr. Arthur Brewer, Stateville's medical director, personally examined Williams on May 8, June 5, and August 28 of 1990. Brewer asked the Stateville officers to allow Williams to use a cane and to live in a low gallery cell so as to minimize the amount of steps he would have to climb. Brewer and Kurian also prescribed several antibiotics to address Williams' osteomyelitis, including Duricef, Keflex, and Velosef, but they never prescribed or administered Ciprofloxacin. At the time, these three antibiotics were recommended when an infection was caused by an organism known as staphylococcus aureus, which accounts for almost ninety percent of the osteomyelitis cases. Brewer admitted that he had not examined the August 1988 culture report indicating pseudomonas aeruginosa and Dr. Greenwald's subsequent prescription for Ciprofloxacin.

After examining Williams' leg on May 8, 1990, Brewer sent a letter of consultation to the University of Illinois Hospital. Williams was sent on three occasions to the University of Illinois Hospital for antibiotic treatment before finally undergoing debridement surgery on December 4, 1990, a procedure to remove decayed bone. The antibiotic which eventually proved successful in treating Williams' condition was Vancomycin, which is ineffective against pseudomonas aeruginosa. Apparently, there has never been a definitive diagnosis as to the organism causing Williams' continued problems.

Williams brought this action against various officers and doctors at the institutions where he resided from 1988 until 1990. Count I alleged that nine individuals were deliberately indifferent to his medical care at Joliet from January 1988 until August 22, 1988, and Count II alleged that sixteen individuals were deliberately indifferent to his medical care at Stateville after August 22, 1988.[1] Eventually, trial commenced on September 2, 1993 against Sergeant Leroy Banks, Warden Salvatore Godinez, Captain Clyde E. Nash, Brewer and Kurian.[2] At the close of Williams' case-in-chief, the district court granted judgment as a matter of law to defendants Banks, Godinez and Nash. The case proceeded against Brewer and Kurian and ended with the judge declaring a mistrial because of a hung jury. A judgment as a matter of law was granted in favor of the defendants on qualified immunity grounds. Williams filed a timely notice of appeal.[3]

---

1. The individuals named in Count I were Michael P. Lane, Director of the Illinois Department of Corrections, J.W. Fairman, Joliet's Warden, and Correctional Officers J. Carroll, R. Haggerty, K. Harkis, T. Kolberg, Milsop, N.O. Neal, and J. Tibbett. The individuals named in Count II were Lane, Michael O'Leary, Stateville's Warden, Assistant Warden Salvatore Godinez, Captain Clyde E. Nash, Sergeant Leroy Banks, Dr. Arthur Brewer, Dr. George Kurian, and Correctional Officers Robert Cattaneo, Georgia Dockery, Donald Eddy, Ronald Fleming, Joseph Giles, Jeffrey Hadley, J. Johnson, Frank Mussato, T. Smith.

2. Prior to trial, Williams voluntarily dismissed his case against Lane, Fleming, Johnson, Kolberg, Tibbett, Dockery, Hadley, Mussato, Smith, Carroll, and Milsop. On October 28, 1992, Judge Marvin E. Aspen granted summary judgment in favor of Wardens Fairman and O'Leary.

3. A notice of appeal was initially filed on October 18, 1993. We permitted Williams to voluntarily dismiss this notice of appeal on November 15, 1993 to address the jurisdictional deficiencies relating to the disposition of several remaining defendants named in the amended complaint. On March 16, 1994, relying on the representations of Williams' counsel that "all the other remaining defendants will be dismissed," an order was issued dismissing the case against defendants Haggerty, Cattaneo, Eddy, Harkis and Neal. A second notice of appeal was filed on April 15, 1994. We again questioned the jurisdiction of this court based upon the failure to evidence that defendant Giles had been dismissed from the case. On May 20, 1994, the district court entered an "[a]mended order to clarify the record" so as to conform with the oral representation of the court that all remaining defendants be dismissed. On June 22, 1994, this

## II.

■ The principal matter on appeal is whether Brewer and Kurian are entitled to qualified immunity for any actions taken in their capacity as medical director and staff physician, respectively, at Stateville. Williams challenges both the district court's implicit finding that Brewer and Kurian were public officials entitled to raise the qualified immunity defense and its explicit conclusion that it was not clearly established during the period in question that the defendants' actions amounted to a constitutional violation. We review the district court's grant of a judgment as a matter of law *de novo*. *Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir.1994).

### A.

■ Williams' main contention is that Brewer and Kurian are not entitled to raise the affirmative defense of qualified immunity because they are not employed by the State.[4] Although the issue was not discussed at trial or in the district court's opinion,[5] Brewer's testimony during his deposition and at trial revealed that he was not actually employed by the Illinois Department of Corrections despite his title as Medical Director of Stateville Correctional Center.[6] Instead, the State of Illinois contracts with a company called Correctional Medical Systems to provide physicians for Stateville, and Brewer's contract was with that company. Thus, the issue is whether Brewer is entitled to raise

the defense of qualified immunity even if he is not employed by the State.

As this court recently held in *Sherman v. Four County Counseling Ctr.*, 987 F.2d 397, 406 (7th Cir.1993), a private party may raise the defense of qualified immunity in certain circumstances. In *Sherman*, a private mental institution treated a patient under a court order directing the provision of discretionary medical treatment. *Id.* at 406. After surveying the decisions of the Supreme Court and other circuits which have addressed the question, we found two broad categories of cases, each justifying different treatment. In cases involving "a private party acting under a government contract fulfilling a governmental function; parties fulfilling statutorily mandated duties under a contract; and a physician acting pursuant to a court order," qualified immunity was applied. *Id.* at 405, (citing *Burrell v. Board of Trustees of Georgia Military College*, 970 F.2d 785, 795 (11th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1814, 123 L.Ed.2d 445 (1993)). By contrast, "cases in which private parties invoked state law in pursuit of private ends," did not apply qualified immunity to the private party's actions. *Sherman*, 987 F.2d at 405; *see, e.g.*, *Wyatt v. Cole*, 504 U.S. 158, 167, 112 S.Ct. 1827, 1833, 118 L.Ed.2d 504 (1992) (private defendant not entitled to be cloaked with qualified immunity when relying upon state attachment procedures to seize plaintiff's property); *Howerton v. Gabica*, 708 F.2d 380, 385 n. 10 (9th Cir.1983) (private landlord not entitled to be cloaked with qualified immunity for instituting unlawful evic-

---

court entered an order finding the April 15, 1994 notice of appeal effective pursuant to Fed. R.App.P. 4(a)(2). Although the defendants continue to contest our jurisdiction, our prior order effectively ends dispute on this matter.

4. Williams asserts for the first time in his reply brief that the defendants did not raise the quality immunity defense until their renewed motion for judgment as a matter of law at the conclusion of all of the evidence. Thus, according to Williams, the defendants waived the argument by failing to raise it earlier. We do not ordinarily consider arguments raised for the first time in a reply brief. *Hondo, Inc. v. Sterling*, 21 F.3d 775, 780 n. 6 (7th Cir.1994). Moreover, the claim has no merit. At a minimum, the defendants raised the qualified immunity defense as an affirmative defense in their answer to Williams' complaint.

5. Williams' assertion that the defendants committed ethical violations by not explicitly raising their employment status is without merit. Brewer admitted at deposition and at trial that he was not employed by the Illinois Department of Corrections. Since there is no per se rule that a defendant must be employed by the state or in public office to raise a qualified immunity defense, it was not improper for the defendants to raise the defense after explaining their positions and job responsibilities at Stateville.

6. Williams never presented evidence as to Kurian's employment status. Since Kurian would clearly be able to raise the qualified immunity defense if he were an employee of the State, our analysis will be limited to the question of whether Brewer is entitled to raise the defense.

tion proceedings). Since the mental institution in *Sherman* fell under the former category of cases, we allowed it to raise the defense of qualified immunity. *Id.* at 406.

The instant case clearly falls within the class of cases in which qualified immunity may be raised by a private defendant. Brewer, through his employer Correctional Medical Systems, was under a government contract to provide services to inmates which the State was obligated to provide under the Constitution. He was "performing duties that would otherwise have to be performed by a public official who would clearly have qualified immunity." *Frazier v. Bailey,* 957 F.2d 920, 928 (1st Cir.1992) (social workers employed by an agency which had a contract with the State to provide services were entitled to raise the defense of qualified immunity). Thus, the district court was correct to apply the qualified immunity defense to the defendants.

### B.

■ Williams also contests the conclusion that it was not clearly established that the defendants' actions rose to the level of a constitutional violation. "Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health—that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir.1994) (quoting *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)). The evidence, viewed in the light most favorable to Williams, only established a number of negligent acts which might be considered medical malpractice. Williams' expert testified that the defendants' actions were below the standard of care for the treatment of osteomyelitis and Brewer admitted that he failed to carefully read Williams' medical his-

tory. Williams' condition, though, was not ignored. Instead, he was given antibiotics which were deemed effective against a staph infection, the most common cause of osteomyelitis. While the defendants did not immediately suggest debridement surgery, the testimony at trial indicated that such an invasive procedure possessed inherent risks. The decision to delay was a matter of judgment, rather than indifference. Williams argues, however, that there is language in some of our cases which indicates that such a pattern of negligent acts might amount to deliberate indifference. *See French v. Owens,* 777 F.2d 1250, 1254 (7th Cir.1985), *cert. denied,* 479 U.S. 817, 107 S.Ct. 77, 93 L.Ed.2d 32 (1986); *Wellman v. Faulkner,* 715 F.2d 269, 272 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984). Thus, Williams asserts that it would have been obvious to a doctor in the defendants' positions that their actions amounted to a constitutional violation.

Even if this evidence of repeated acts of medical malpractice is conceded, however, it was not clearly established during the period in question that such a pattern of negligent acts, without more, could constitute deliberate indifference.[7] In *Kelley v. McGinnis,* 899 F.2d 612, 617 (7th Cir.1990), this court explicitly stated that "[w]e have yet to rule definitively on the validity of this theory of recovery under the Eighth Amendment." *Id.* Thus, given the uncertainty in the law during this period, Brewer and Kurian are protected by qualified immunity for their actions in treating Williams.[8]

### C.

■ Finally, Williams argues that even if the defendants were cloaked with qualified immunity on his claim for damages, it cannot protect them from his claim for equitable relief. This claim for an injunction, however, was mentioned in Williams' second amended

---

7. Indeed, it would appear clear today that evidence of repeated acts of medical malpractice, without more, could not constitute deliberate indifference. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Sellers,* 41 F.3d at 1102.

8. Williams, in the alternative, seeks leave of the court to allow his complaint to be amended to conform to the evidence of medical malpractice introduced at trial. However, he offers no explanation for the failure to make such a motion in the trial court. By such delay, he has thus waived this argument. *Figgie Int'l Inc. v. Miller,* 966 F.2d 1178, 1181 (7th Cir.1992).

complaint and never pursued in the final pretrial order or at trial. Accordingly, it was waived. *See Bebout v. Norfolk & Western Ry. Co.*, 982 F.2d 1178, 1179 n. 1 (7th Cir. 1993). In any event, even if the issue had been pursued, his prayer for equitable relief suffers from two defects. First, he asks for relief which is no longer necessary since his osteomyelitis has been cured. Although Williams' bone has been weakened, the infection is gone and thus his request that the court order the defendants to administer the proper antibiotic, place his name on a list of inmates with a chronic illness, place him in the infirmary, submit a medical plan for the treatment of his osteomyelitis, and hire a medical specialist to monitor his condition, is moot. Second, any relief which may still be fulfilled, such as to enjoin "the defendants, their successors and the employees of the Illinois Department of Corrections from interfering with Mr. Williams' right to adequate medical care," is improper since Williams never even named the Illinois Department of Corrections in his complaint or clarified whether he was suing the defendants in their official capacities so as to give the court jurisdiction over their successors (in fact, the crux of Williams' first argument is that the defendants do not have any official capacity). Thus, Williams' equitable claims do not survive the district court's grant of judgment as a matter of law in favor of the defendants.

### III.

For the above reasons, the decision of the district court is AFFIRMED.