**Reginold J. DORSEY, Plaintiff,**

v.

**ST. JOSEPH CO. JAIL OFFICIALS, aka St. Joseph Co., Joseph F. Nagy, David Stafford, Robert Thompson, Paul P. Moffa, and Greg Delinski, Defendants.**

**No. 3:91cv321 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 18, 1996.

---

David E. Vandercoy, Dave Welter, Ilse Masselink, Valparaiso Law Clinic, Valparaiso University, Valparaiso, IN, for plaintiff.

Larry L. Ambler, Allen Fedder Herendeen and Kowals, South Bend, IN, for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. Procedural History

This cause is before the court on the defendants motion for summary judgment. Originally as a *pro se* plaintiff, Reginold J. Dorsey ("Dorsey") filed a complaint on June 17, 1991 alleging a claim under 42 U.S.C. § 1983, and invoking this court's jurisdiction under 28 U.S.C. §§ 1331, 1343(3) and (4).

On March 16, 1992, a telephonic pretrial conference was held upon which a written order was entered on July 23, 1992. On September 17, 1992, Dorsey's complaint was dismissed because the complaint was defective in failing to meet the pleading demands required by *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and its progeny in this circuit. Dorsey was granted leave to amend his complaint by December 1, 1992. On November 10, 1992, Dorsey was granted an extension until January 31, 1993 to file his amended complaint. On January 25, 1993, Dorsey filed the amended complaint, at which time a new cause number was assigned. On March 2, 1993, the judgment dismissing cause number S91–321 was vacated and case S91–321 was reinstated. Furthermore, cause number S93–7 was closed, and all pleadings filed in S93–7 were transferred as entries to cause number S91–321. On October 28, 1993 and November 18, 1994, second and third amended complaints were filed respectively.

## II. Facts

Dorsey was a pretrial detainee at the St. Joseph County Jail from July 3, 1989 until May 14, 1990. Dorsey alleges that the defendants, St. Joseph County Jail Officials, aka Joseph F. Nagy, David Stafford, Robert Thompson, Paul P. Moffa, and Greg Delinski have violated his Fourteenth Amendment rights by customs or policies which have failed to provide adequate medical treatment and have failed to provide an effective procedure upon which to obtain timely medical treatment. Upon being detained at the St. Joseph County Jail, Dorsey informed a jail official that he was a diabetic, which required a special diet to keep his blood sugar at a safe level, and that he had high blood pressure which required medication. Defendant Nagy referred Dorsey to Dr. Hansel Foley, at which time Dorsey's medical needs were made known. Defendant Nagy contracted with Memorial Hospital to provide medical services to the jails' inmates. Memorial's dietician was also consulted to provide medical dietary information concerning the inmates. Dorsey's complaint states that the defendants failed to provide a proper nutritious diet satisfying his special medical dietary needs. Dorsey was hospitalized from August 19, 1989 to August 25, 1989 at Memorial Hospital because of his uncontrolled diabetes mellitus and essential hypertension. Dr. Foley requested that Dorsey receive a diet of 2,800 calories to control these medical problems.

Dorsey's complaint states that the defendants perpetuated overcrowding and under staffing within the jail, and failed to train personnel properly, which in turn had the effect of "uncontrollable prison violence". The complaint further alleges that on September 8, 1989, Dorsey was threatened by cellmate Jerry Jones and three other inmates. On September 8, 1989, Dorsey was removed to a single man cell. While being removed to the single man cell, Dorsey alleges that defendants Stafford, Thompson, Moffa, and Delinski used excessive force against him without cause or provocation which violated his Fourteenth Amendment rights.

Dorsey was placed in an area known as the bull pen of the St. Joseph County Jail. A number of men in this area were either waiting to go to court, or had just returned from being in court. Dorsey alleges that he was approached by inmate Jerry Jones, at which time a fight ensued and Dorsey's right arm was broken. Dorsey's arm was put into a cast. Dorsey had further problems with his arm and was then examined on December 6, 1989 at Memorial Hospital. Dorsey alleges that he has lost partial use of his arm from the unavailability of adequate medical care or procedure.

On December 18, 1989, Dorsey was transferred to Westville Correctional Center for medical treatment. Defendant states that this transfer was also for Dorsey's safety. On February 15, 1990, Dorsey was transferred to St. Joseph County Jail and placed in the single man cell. Finally, Dorsey was transferred back to Section 2–N of the jail. Dorsey alleges that this area was overcrowded, and he therefore had to sleep on the floor.

On May 9, 1990, a fight between Dorsey and another inmate occurred. Dorsey's arm was broken again and he suffered a laceration over his left eye requiring stitches. Dorsey further alleges that he also suffered a concussion. Dorsey was taken to Memorial Hospital for treatment of his injuries. Dor-

sey's complaint alleges that Memorial Hospital refused to admit him because there was not a bone specialist on staff; he was given a sling and returned to St. Joseph County Jail. Furthermore, Dorsey alleges that he again received improper medical treatment for his broken arm, and lost partial use of his right arm permanently.

### III. Analysis and Discussion

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir.1993). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir. 1994); *Hughes v. Joliet Correctional Ctr.*,

931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. at 2512–14.

The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Serv.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Eastman Kodak*, however, is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

### A. Statute of Limitations

 Originally as *pro se* litigant, Dorsey is owed a heightened judicial solicitude because of the difficulties a *pro se* litigant has in mastering the procedural and substantive requirements of the legal structure. *Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982), *cert. denied*, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520–521, 92 S.Ct. 594, 595–596, 30 L.Ed.2d 652 (1972); *Hayes v. Walker*, 555 F.2d 625, 628 (7th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). The extent a court should be required, or permitted to go in any given case in assisting a *pro se* litigant is unclear and undecided. *Caruth*, 683 F.2d at 1050. Appropriately, the ultimate determination of whether a *pro se* litigant has received a fair and meaningful consideration of his claims must be made on a case-by-case basis. *Id.*

In the case of *Woods v. Indiana University–Purdue University at Indianapolis,* 996 F.2d 880 (7th Cir.1993), the Seventh Circuit dealt with a situation which closely parallels the one here in issue involving Rule 15(c): Relation Back of Amendments. *Woods* dealt with a proposed amended complaint that sought to bring individual defendants into a federal civil rights action who were not named as defendants before the expiration of the normal two-year statute of limitations. *Id.* at 882. The Court construed the original complaint as stating the defendants as: Indiana University and its police department. *Id.* at 883. It took considerable time before Woods' counsel finally reshaped the complaint to target only the ultimate individual defendants in their individual capacities. *Id.*

■ The Woods court thoroughly discussed Rule 15(c) as it applies to improperly naming a defendant. *Id.* at 882–888. The Court first stated that once an action has been timely filed, fairness militates against allowing a limitations defense to an opposing party who knows of the action within the required time frame—even though that party is named as a defendant only later, in an amendment that arises out of the same conduct, transaction or occurrence addressed in the original pleading. *Id.* at 884 (quoting 6A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1496, at 64; id. § 1498, at 107 (2d ed. 1990 & 1992 pocket part)). Also stated by the court, Rule 15(c) has been utilized to allow the relation back of amendments changing or adding parties so long as no prejudice will ensue. *Woods* at 884 (citing *Travelers Indem. Co. v. United States ex rel. Constr. Specialties Co.,* 382 F.2d 103, 106 (10th Cir.1967)). Rule 15(c) requires a court to determine what an omitted defendant having notice of a lawsuit "should have known" in consequence of the plaintiff's "mistake" (that is, in light of the plaintiff's failure to understand that the originally omitted defendant was a party that should have been sued in the first place). *Woods* at 887. This is an objective rather than subjective inquiry. *Id.* The Court noted the presumption that every state's sovereign immunity from, and all state employees' personal exposure to, § 1983 liability for constitutional torts was clearly established when the lawsuit was filed

(even though this realization came only belatedly to Woods' lawyer). *Id.* Therefore in concluding, the Court stated that the objective question—what the omitted defendants "should have known" about whether they would have been named to begin with but for the mistake by Woods' lawyer, rather than the purely subjective question of what any individual defendant actually knew in that respect—permits of only one answer. *Id.*

The *Woods* Court also discussed what constitutes the proper notice to be given to a defendant. The court stated that to determine whether the adverse party, viewed as a reasonably prudent person, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question. *Id.* at 888.

Finally, the Court explained that relation back is proper "if a sufficient identity of interest exists between the new defendant and the original one so that relation back would not be prejudicial". *Id.* at 889 (citing *Norton v. International Harvester Co.,* 627 F.2d 18, 21 (7th Cir.1980)).

■ Under the *Woods* Court direction, Plaintiff Dorsey was properly allowed to amend his original complaint which stated the defendants as: "St. Joseph County Jail Officials," which included an incorrectly plead § 1983 action. There must be individual participation and involvement by a defendant, and the concept of respondeat superior cannot be the basis of the claim. *Rascon v. Hardiman,* 803 F.2d 269 (7th Cir.1986); *Wellman v. Faulkner,* 715 F.2d 269 (7th Cir.1983), *cert. denied,* 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984); *Duncan v. Duckworth,* 644 F.2d 653 (7th Cir.1981). Therefore, having allowed Dorsey to amend his complaint, via Rule 15(c), to include the individual names of the defendants will not defeat this action by the time bar application of Rule 17(a).

From the reasoning of *Woods,* Rule 15(c) requires a court to determine what an omitted defendant having notice of a lawsuit "should have known" in consequence of the plaintiff's "mistake". Here, the omitted de-

fendants should have known that they would have been named but for the mistake by Dorsey. The original complaint stated the defendants as "St. Joseph County Jail *Officials*"; this would be considered a "mistake" under Rule 15(c) following the reasoning in *Woods.* It can be seen that Dorsey intended the omitted defendants to be the proper defendants to this action, and not the St. Joseph County Jail itself.

In deciding this issue, this Court determined whether the omitted defendants received proper notice. If the omitted defendants, viewed as reasonably prudent people, ought to have been able to anticipate or should have expected that the character of the originally pleaded claim might be altered or that other aspects of the conduct, transaction, or occurrence set forth in the original pleading might be called into question, then sufficient notice was acquired. Upon service being sent by certified mail on August 8, 1991, it is reasonable to assume that upon the receipt by the St. Joseph County Jail, at which the omitted defendants are employed, proper notice was given of the nature discussed in the *Woods* opinion.

The prejudice factor, as considered here, shows that there is a sufficient identity of interest between the new defendant and the original one. *Woods* at 889. Labeling the defendants as the "St. Joseph County Jail Officials" certainly encompasses the omitted defendants since they are such. Therefore, the defendants will not be prejudiced by the relation back to the original pleading under Rule 15(c). The case of *Wadsworth v. United States Postal Service,* 511 F.2d 64 (7th Cir.1975) is key to this very point. In that case, the Court addressed the impact of Rule 17(a) and Rule 15(c) of the Federal Civil and Judicial Rules of Procedure on naming the proper party to an action. The main thrust of Rule 17(a) is to allow a correction in parties after the statute of limitations has run, despite the valid objection that the original action was not brought by the real party in interest. *Id.* 511 F.2d at 66 (quoting 3A J. Moore, Federal Practice Paragraph 17, 15–1, at pp. 602–603 (2d ed. 1974) (footnotes omitted)). This case further supports this court's decision to allow Dorsey to amend his complaint to include the omitted defendants.

## B. Conditions of Confinement

 The proper inquiry to determine whether a state actor has violated a pretrial detainee's right to due process is, whether the act at issue amounts to punishment of the detainee. *Salazar v. City of Chicago,* 940 F.2d 233, 239 (7th Cir.1991), citing *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1871–1872, 60 L.Ed.2d 447. Punishment, by its normal meaning, implies intent; it is "a deliberate act intended to chastise or deter." *Salazar,* 940 F.2d at 239, citing *Duckworth v. Franzen,* 780 F.2d 645, 652 (7th Cir.1985). Therefore, an act done with any state of mind less than intent, no matter how "gross" that state of mind, is not punishment. *Id.* at 239. Additionally, criminal recklessness is a proxy for intent. *Salazar* at 239, citing *Archie v. City of Racine,* 847 F.2d 1211, 1220 (7th Cir.1988). Therefore, only intentional or criminally reckless conduct can amount to punishment, and only intentional or criminally reckless conduct in the medical treatment of a pretrial detainee—that is, deliberate indifference to the detainee's serious medical need—violates due process. *Salazar* at 239. The bottom line inquiry is to decide if the act is punishment. Punishment is punishment, and there is no reason why the term should mean two different things in the Eighth and Fourteenth Amendment contexts. *Id.* at 240. Thus, *Duckworth's* definition of punishment is just as relevant in the Fourteenth Amendment context as it is in the Eighth Amendment context. *Id.*

 In making a successful Fourteenth Amendment claim, Dorsey faces a heavy burden. It must be shown that the jail officials acted with 'deliberate indifference' to the inmates health or safety; and that they knew that the inmates faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1973, 128 L.Ed.2d 811 (1994). The court in *Farmer* went on to say that the Constitution 'does not mandate comfortable prisons'. *Id.* at ——, 114 S.Ct. at 1976, citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981). The jail officials have a duty under the Eighth Amendment to provide humane con-

ditions of confinement. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1976, citing *Hudson v. Palmer,* 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200–3201, 82 L.Ed.2d 393 (1984). They must also make sure that inmates receive adequate food, clothing, shelter, and medical care. *Id.* Nevertheless, a constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious'. *Id.,* citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2323–2324, 115 L.Ed.2d 271 (1991). The *Farmer* court further stated:

> Deliberate indifference entails something more than negligence, but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. Thus, it is the equivalent of acting recklessly. Subjective recklessness, as used in the criminal law, is the appropriate test for 'deliberate indifference.' Permitting a finding of recklessness only when a person has disregarded a risk of harm of which he was aware is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in this Court's cases. The Amendment outlaws cruel and unusual 'punishments,' and not 'conditions,' and the failure to alleviate a significant risk that an official should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment under the Court's cases.

*Farmer,* —— U.S. at ——, 114 S.Ct. at 1973. The deliberate indifference standard from *Farmer* was reiterated in the case of *Williams v. O'Leary,* 55 F.3d 320 (7th Cir. 1995). The *Williams* Court stated: "Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health—that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Williams v. O'Leary,* 55 F.3d 320, 324 (7th Cir.1995), citing *Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir.1994) (quoting, *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)). *See also Del Raine v. Williford,* 32 F.3d 1024 (7th Cir.1994), quoting *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir.1985); *see Wilson*

*v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *McGill v. Duckworth,* 944 F.2d 344 (7th Cir.1991).

■ This Court must ascertain whether the defendant Nagy acted with deliberate indifference and therefore withheld medical care from Dorsey. From Dorsey's medical records, in which clinical notes were taken, this plaintiff was treated by Dr. Foley; however, he was belligerent and uncooperative and refused treatment on several accounts. This is evidenced by the extensive documentation by the nurses in the clinical notes in Dorsey's medical file. Dorsey also received a proper, nutritious, and monitored diet; which is also illustrated by the clinical notes in Dorsey's medical file. Defendant Nagy did not show deliberate indifference towards Dorsey. Defendant Nagy knew of Dorsey's condition and took reasonable measures to abate any substantial risk of serious harm. This is evidenced by the fact that there existed a contract for medical services with Memorial Hospital, along with the care that was provided by Dr. Foley. Therefore, Dorsey did receive proper medical treatment for his condition (at least to the extent for which he would accept it), and he has not established deliberate indifference on behalf of defendant Nagy.

■ The next claim alleges violence against Dorsey by other inmates. Speaking on inmate safety the Supreme Court has remarked that "the safety of the institution's guards and inmates is perhaps the most fundamental responsibility of the prison administration." *Hewitt v. Helms,* 459 U.S. 460, 473, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983), *revd,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654. (*Cf.* 28 CFR § 541.21 (provides for establishment of administrative detention for federal inmates who need protection at the discretion of prison staff)). More recently the Court remarked, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer,* —— U.S. at ——, 114 S.Ct. at 1976. However, inter-inmate violence as well as generally harsh prison conditions do not necessarily result in constitutional violations. *Id.* at ——, 114 S.Ct. at 1977 (citing *Rhodes*

*v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).

 In considering Dorsey's Fourteenth Amendment claim concerning his injuries at the hands of another inmate, the standard in *Farmer* can be utilized. This standard states that there are two requirements that must be met in order for a prison official to be held liable for a violation of the Eighth Amendment. First, the alleged deprivation must be objectively "sufficiently serious". *Farmer,* —— U.S. at ——, 114 S.Ct. at 1977, citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2323–2324, 115 L.Ed.2d 271 (1991). A denial of "the minimal civilized measure of life's necessities" must result from a prison official's act or omission. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1977, citing *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399. The second requirement states that, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.,* citing *Wilson,* 501 U.S. at 297, 111 S.Ct. at 2323. A prison official must have a "sufficiently culpable state of mind;" this is the deliberate indifference standard. *Id.,* citing *Wilson* at 302, 303, 111 S.Ct. at 2326–2327. Considering the limited amount of space available at a jail facility, and the great influx of detainees; all inmates cannot be accommodated in single cell housing so as to ensure their safety to this degree. However, a certain amount of space is allotted for protection purposes, to enable the jail to provide further safety to a detainee, when such is required. This is evidenced by the fact that Dorsey was transferred to a single cell unit for his own protection. It cannot be said that there was a "denial of the minimal civilized measure of life's necessities". Therefore, Dorsey has not met the burden of proof for this Fourteenth Amendment claim. This alleged deprivation of Dorsey's rights that the jail officials had a sufficiently culpable state of mind, and thereby failed to prevent harm by the violence of other inmates, has not been shown. Dorsey did not prove that he was incarcerated under conditions posing a substantial risk of serious harm.

In addressing whether the defendants violated Dorsey's Fourteenth Amendment rights in relation to overcrowding, under staffing, and improperly training personnel at the jail, the prior *Farmer* case analysis can once again be used to help examine this question.

The court in *Farmer* stated:

A prison official cannot be found liable under the Eight Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer,* —— U.S. at ——, 114 S.Ct. at 1979.

The conditions at the jail cannot be seen to have reached a level of being inhumane, nor are the deprivations alleged sufficiently serious. Dorsey has not proved a denial of minimal civilized measures of life's necessities or that the jail conditions posed a substantial risk of serious harm. The alleged overcrowding, under staffing, and improperly trained personnel is without merit. Once again, this is evidenced by the fact that Dorsey's diet was being monitored, he did receive proper medical treatment (upon accepting the care being provided by the medical staff), and for Dorsey's own protection, he was transferred to a single cell unit. This does not signify the results of understaffing or inadequate training. Furthermore, this does not meet the standard of deliberate indifference to a sufficiently serious deprivation on the part of the defendants. It cannot be shown that the defendants consciously disregarded a substantial risk of harm.

 Finally, this Court must decide whether defendants Stafford, Thompson, Moffa, and Delinski used excessive force against Dorsey without cause or provocation, which in turn violated Dorsey's Fourteenth Amendment rights. "The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment". *Crane v. Logli,* 992 F.2d 136, 139 (7th Cir.1993), quoting *Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). The *Freeman* case can be used

for the excessive force analysis. This court stated:

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. Factors to consider include: the need for the application of force; the relationship between the need and the amount of force that was used; the extent of injury inflicted; and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Freeman v. Franzen,* 695 F.2d 485, 492 (7th Cir.1982), quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973), wise words by a great Circuit Judge, Henry J. Friendly.

Since Dorsey was being transferred to a single cell unit for his own protection, it can hardly be said that the officials were acting without good faith. The jail officials have a responsibility of establishing order and maintaining security to ensure the safety of the facility. The use of force may be inevitable to provide for the assurance of these goals. Dorsey has not shown that force was applied maliciously and sadistically for the purpose of causing harm. In fact, affidavits from the jail officials show that Dorsey did not want to be moved to the single man cell, and that he became recalcitrant and belligerent to the defendants. Therefore, it cannot be shown that the amount of force used was excessive to the degree of becoming punishment.

In conclusion, Dorsey has not shown that the defendants in this case have violated his Fourteenth Amendment rights. The deliberate indifference standard was not met as related to the issues of medical treatment, overcrowding, under staffing, improperly trained personnel, or the use of excessive force.

Accordingly, the Defendants' Motion for Summary Judgment is hereby GRANTED. The clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**