

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00351-CV

_____

ROGELIO REGALADO, Appellant

V.

MANAGEMENT & TRAINING CORPORATION AND WARDEN L. THOMAS,
Appellees

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV23-07-543

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Wallach

## MEMORANDUM OPINION

Appellant Rogelio Regalado, pro se, is an inmate confined in the Texas Department of Criminal Justice (TDCJ). He sued Appellees Management & Training Corporation (MTC) and Warden L. Thomas (Warden), the warden of the corrections facility that MTC operates in Bridgeport, Texas, under a contract with TDCJ. Regalado's suit alleged that while he was confined in the MTC facility, Appellees had failed to provide him with Kosher meals, which he contended was a violation of his rights under the Texas Constitution. He sued for damages as well as injunctive and declaratory relief. He also alleged that the failure to provide him with Kosher meals was negligence. Appellees filed a motion to dismiss the suit under Chapter 14 of the Texas Civil Practice and Remedies Code, *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 14.001–.014, and the trial court granted the motion.

Regalado's claim for damages for alleged constitutional violations has no basis in law, and his request for declaratory and injunctive relief is moot because he is no longer at the MTC facility. As for his negligence claims, to the extent that he challenges their dismissal, his argument is inadequately briefed. Accordingly, we will affirm.

## Background

According to Regalado, he was at MTC's facility from February 21, 2023 to June 2, 2023. Before that, he was at the TDCJ's Coffield Unit. While at Coffield, in November 2022, Regalado filed a Step 1 grievance. *See* Tex. Gov't Code Ann.

§ 501.008 (requiring the TDCJ to maintain a system "for the resolution of grievances by inmates housed in facilities operated by the department or under contract with the department"); Tex. Dep't of Crim. Just., Offender Orientation Handbook 73–74 (February 2017) (setting out the TDCJ's grievance procedure, which begins with an inmate's completing and submitting a Step 1 grievance form), *available at* https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf. Unhappy with the response, he filed a Step 2 grievance in January 2023. In both steps, Regalado stated that Coffield was "where the incident occurred."[1]

In both steps of the grievance process, he asked for the facility to provide him with three Kosher meals a day, a hot pot with which to cook those meals, and a storage locker to store the food. He also asked to be transferred to a "Jewish Program Unit" where he could "have access to Jewish/Kosher meals." In response, he was told that the unit's chaplain department did not provide meals but that he could order those meals through the commissary and that he could request to be transferred "to a

---

[1]On his Step 2 grievance form, on the line on which he identified his unit, the letters "CO" had been written and then crossed out and the letters "BR" filled in. "BR" is not further explained. There is no indication of who crossed out "CO" and added "BR" and no indication of when it was done. However, although the form indicates that the TDCJ received it before Regalado's transfer to the MTC facility, the person responding to the grievance—a TDCJ director of religious services—signed it on March 21, 2023, after Regalado had been transferred to MTC. However, even if "BR" indicates that Regalado received the response while at MTC's Bridgeport facility, the form still indicates that Coffield was the "[u]nit where [the] incident occurred." Given our disposition of Regalado's claims, we assume for purposes of this opinion that the grievances he filed regarding what happened at Coffield were sufficient to complain about his time at the MTC facility.

3

Jewish unit." In his Step 2 grievance, he stated that he could not afford Kosher meals. The response he received to that grievance did not address his complaint about costs, but it told him what form to submit to request a transfer to a Jewish unit, and it explained the process by which he could be approved for the transfer.[2]

On July 26, 2023, Regalado filed this suit against Appellees. *See* Tex. Gov't Code Ann. § 501.008(d) (requiring an inmate to go through the grievance procedures before filing suit in state court). By that time, he had been moved to the TDCJ's Vance Unit in Richmond, Texas. Regalado alleged that he is a "devout Messianic Jew," that he keeps Kosher, and that MTC did not provide him with Kosher meals while he was confined at its facility. He further alleged that MTC does not have a Kosher meal option and that this failure violated his right under Texas Constitution Article I, § 6 to worship according to the dictates of his own conscience. Regalado sought damages as well as injunctive and declaratory relief, although he did not more specifically state the nature of the injunctive and declaratory relief that he sought. Under a section titled "Negligence," he further alleged that he "is daily denied the ability to observe Kosher," that MTC had failed in its responsibility to provide for his religious needs, and that it had failed in its duty to provide him with a nutritious diet that also complies with his religious needs. With his suit, Regalado filed a statement of inability to afford costs. He also filed an unsworn declaration listing his previous

_____

[2]The record does not reflect whether Regalado submitted a transfer request after he received this response or if he has access to Kosher meals at his current unit.

litigation, as well as copies of his Step 1 and Step 2 grievance forms, accompanied by an unsworn declaration.

Appellees filed a motion to dismiss Regalado's claims. They asserted they had not been served with an affidavit containing Regalado's past lawsuits, although they acknowledged that Regalado may have filed one.[3] They also alleged that the suit should be dismissed because they had not been served with an affidavit accompanied by copies of his Step 1 and Step 2 grievances.[4] Appellees further asserted that the Texas Constitution does not create a private right of action for damages and that MTC was entitled to sovereign immunity, and therefore, the claims against Warden must be dismissed under Texas Civil Practice and Remedies Code Section 101.106.

---

[3]Chapter 14 requires that such an affidavit or declaration be filed with the trial court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.004 (providing that "[a]n inmate who files an affidavit or unsworn declaration of inability to pay costs shall *file* a separate affidavit or declaration . . . identifying each action . . . previously brought by the person and in which the person was not represented by an attorney") (emphasis added). Regalado filed with his petition an unsworn declaration listing his prior litigation. Appellees did not cite any authority for the proposition that an inmate's suit must be dismissed if the inmate does not serve the defendant with a copy of the affidavit or declaration, and Appellees did not argue that the declaration filed by Regalado in the trial court did not adequately describe his prior lawsuits.

[4]Chapter 14 requires that such an affidavit or declaration be filed with the trial court. *See id.* § 14.005 (stating that "[a]n inmate who files a claim that is subject to the grievance system established under Section 501.008, Government Code, shall *file with the court* . . . an affidavit or unsworn declaration" stating the date on which the grievance was filed and the date on which the inmate received the written decision, along with a copy of the written decision) (emphasis added). Appellees did not explain in their motion how the declaration and copies of grievances filed by Regalado were insufficient to satisfy the statute's requirements.

5

The trial court granted Appellees' motion without stating the grounds, and it dismissed Regalado's claims with prejudice. Regalado filed a "Motion to Reinstate Dismissed Case/Motion to Alter or Amend Judgment/First Amended Original Petition, or alternatively, Plaintiff's Notice of Appeal." In the motion, Regalado argued that he had met Chapter 14's requirements and that his claims had merit. The motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b.

**Review of Chapter 14 Proceedings**

Because Regalado filed a statement of inability to pay costs in the trial court, he had to comply with Texas Civil Practice and Remedies Code Chapter 14. *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.002. Under that chapter, a trial court may dismiss an inmate's pro se claim if, among other grounds, the court finds that the claim is frivolous or malicious. *Id.* § 14.003(a). In making that determination, the trial court may consider whether "(1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law or in fact; [or] (3) it is clear that the party cannot prove facts in support of the claim." *Id.* § 14.003(b).

A claim is also frivolous if the court finds that it is "substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts." *Id.* To help the trial court make that determination, an inmate must provide an affidavit or declaration setting out the operative facts and identifying information of any prior pro se suits by the inmate. *Id.* § 14.004(a). The inmate must also file an affidavit or unsworn declaration stating the date on which the inmate filed a grievance

6

and the date on which the inmate received a written decision, and the inmate must provide a copy of the written decision. *Id.* § 14.005.

## Discussion

Regalado brings four issues on appeal. In his first and third issues, he asserts that the trial court erred in dismissing his suit under Chapter 14 because he complied with the chapter's requirements. In his second issue, he argues that the trial court failed to apply a liberal construction of his pro se pleadings and that his suit had a legal basis under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C.A. § 2000cc-1, and under 42 U.S.C.A. § 1983, *see Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) (noting that private prisons and their employees may be sued under § 1983). In his fourth issue, he asserts that MTC does not have sovereign immunity because it is a private corporation. We address his issues out of order.

### I. Sovereign Immunity

Because immunity implicates jurisdiction, *see Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012), we first address Regalado's fourth issue challenging Appellees' assertion of immunity. In their brief, Appellees argue as they did in the trial court that MTC was entitled to sovereign immunity and that Warden was therefore entitled to dismissal of Regalado's claims under Section 101.021 of the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021.

7

MTC is a private entity. A private entity that contracts with the government may be entitled to immunity when the government exercises such control over the entity that "the alleged cause of the injury was not the independent action of the contractor, but the action taken by the government *through* the contractor." *Univ. of the Incarnate Word v. Redus*, 602 S.W.3d 398, 405 (Tex. 2020) (quoting *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 125 (Tex. 2015)).

Governing statutory authority indicates that the TDCJ controls multiple aspects of a private contractor's provision of services for the TDCJ. *See* Tex. Gov't Code Ann. §§ 495.004 (listing acts that a private vendor may not perform, such as awarding good conduct time), .008 (requiring the TDCJ to audit and monitor facilities operating under contracts with private vendors and to ensure that contracts contain certain provisions). However, nothing in the short appellate record provides information about the control that TDCJ has over MTC's decision about what meals to provide to the inmates in its care or whether MTC has control over whether to provide Kosher meals or transfer inmates to Jewish units. Further, statutory authority indicates that a private entity under contract with the TDCJ for prison services does *not* have immunity in a suit arising from the entity's performance of those services. *See Id.* §§ 495.001(a), .005 (providing that the board of corrections may contract with a private vendor for the operation and management of a secure correctional facility but that "[a] private vendor operating under a contract authorized by this subchapter may not claim sovereign immunity in a suit arising from the services performed under the

8

contract by the private vendor"). Appellees did not address this authority in their motion to dismiss and do not address it on appeal.

Appellees cite cases for the general proposition that private parties contracting to provide governmental duties may have immunity extended to them. *See Williams v. O'Leary*, 55 F.3d 320, 323–24 (7th Cir. 1995) (applying qualified immunity under federal law); *Frazier v. Bailey*, 957 F.2d 920, 928–29 (1st Cir. 1992); *Citrano v. Allen Corr. Ctr.*, 891 F. Supp. 312, 315–20 (W.D. La. 1995); *Knowles v. City of Granbury*, 953 S.W.2d 19, 24 (Tex. App.—Fort Worth 1997, writ denied) (discussing official immunity of person employed by municipal airport and noting "general rule" that official immunity extends to private parties who contract to undertake governmental duties); *Putthoff v. Ancrum*, 934 S.W.2d 164, 169 n.7 (Tex. App.—Fort Worth 1996, writ denied) (addressing claim against medical examiner performing under contract with county and noting that "[i]t is generally recognized that official immunity extends to private parties under contract to provide governmental duties"). However, none of those cases address whether Texas confers its sovereign immunity on a private operator of a correctional facility in this state. Accordingly, we sustain Regalado's fourth issue. Nevertheless, as we discuss below, we will affirm the dismissal of Regalado's claims.

## II. Constitutional Violation

We next address Regalado's second issue and the trial court's disposition of his claims based on Appellees' alleged violation of his right under the Texas Constitution to practice his religion. As noted, the record contains no information about MTC's

relationship with the TDCJ other than Regalado's allegation that MTC operates the Bridgeport facility under a contract with the TDCJ. *See Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997) (noting that "the guarantees of the Texas Bill of Rights generally apply only against the government"); *cf. Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351, 95 S. Ct. 449, 453 (1974) (discussing when the actions of a private entity may be considered government acts); *Redus*, 602 S.W.3d 405 (same). Nevertheless, assuming for purposes of this opinion that MTC's contract with the TDCJ and its performance thereunder are such that its acts may be considered acts of the State, Regalado's claim for damages under the Texas Constitution must nevertheless fail. No private cause of action exists for money damages for violation of rights under the Texas Constitution. *See City of Arlington v. Randall*, 301 S.W.3d 896, 906 (Tex. App.—Fort Worth 2009, pet. denied), *disapproved of on other grounds by Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411 (Tex. 2015); *see also City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). Thus, Regalado cannot recover damages on his claims under the Texas Constitution.

As for Regalado's claims against MTC and Warden for injunctive and declaratory relief, even if those claims otherwise would have had a legal basis, they are moot because he is no longer confined at MTC's facility. *See Robinson v. Alief I.S.D.*, 298 S.W.3d 321, 327 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("[A] claim for declaratory relief is moot if the party is no longer subject to the alleged illegal conduct."); *cf. Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). Assuming for purposes

10

of this opinion that Regalado's Article I, Section 6 right was violated if free Kosher meals were not provided to him while he was confined in the TDCJ, and even assuming that the TDCJ unit at which he is currently housed is not providing him with free Kosher meals, injunctive and declaratory relief addressing private contractor MTC and its employee Warden would not remedy that violation. Although Regalado argued in his motion to reinstate that his claim was not moot because he was going to be transferred back to MTC's facility after completing a program at his current unit, nothing in the record supports that assertion.

Because Regalado could not recover damages for an alleged violation by Appellees of his right under the Texas Constitution to practice his religion, and because any claim for declaratory or injunctive relief based on a constitutional violation is moot, the trial court correctly dismissed those claims.

Regarding Regalado's contention on appeal that he has a claim under RLIUPA and under § 1983, he did not plead those federal-law claims below. Although the trial court was required to liberally construe Regalado's petition, *see Hamilton v. Pechacek*, No. 02-12-00383-CV, 2014 WL 1096018, at *3 (Tex. App.—Fort Worth Mar. 20, 2014, no pet.) (mem. op.); *see also Vargas v. Tex. Dep't of Crim. Just.*, No. 03-12-00119-CV, 2012 WL 5974078, at *3 (Tex. App.—Austin Nov. 30, 2012, pet. denied) (mem. op.) (construing inmate's petition to allege a § 1983 claim when he alleged a violation of the federal Due Process Clause), his petition specifically alleged a violation of the

11

Texas Constitution and contained no reference to federal law or to the federal constitution. We overrule Regalado's second issue.

## III. Negligence

Regarding Regalado's negligence claims, his brief does not specifically mention those claims, use the word negligence, or reference any of the elements of negligence, and it thus appears that he does not challenge their dismissal on appeal. Even if he does challenge their dismissal, however, and even construing his brief liberally, the brief contains no argument for why his negligence claims have an arguable basis in law. Thus, to the extent that Regalado challenges the negligence claims' dismissal, he has waived the issue by inadequate briefing.[5] *See* Tex. R. App. P. 38.1(i); *Stone v. Christiansen*, No. 02-22-00450-CV, 2023 WL 5766076, at *7 n.11 (Tex. App.—Fort Worth Sept. 7, 2023, no pet.) (mem. op.).

Given our holdings above, we do not address Regalado's first and third issues. *See* Tex. R. App. P. 47.1.

## IV. Mandamus Relief

In his brief, Regalado asks this court for mandamus relief compelling the trial court to rule on his motion to reinstate, which we construe as a motion for new trial.

---

[5]Additionally, to the extent that Regalado's petition included a claim for failing to provide nutritious food that was separate from his claim regarding Kosher meals, that claim has no basis in law because he did not include this complaint in his grievances. *See Retzlaff v. Tex. Dep't of Crim. Just.*, 94 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *see also Leachman v. Dretke*, 261 S.W.3d 297, 312 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g).

*Compare* Tex. R. Civ. P. 165a (allowing motions to reinstate following dismissal for want of prosecution), *with* Tex. R. Civ. P. 320, 329b (addressing post-judgment motions for new trial). When a trial court does not sign a written order ruling on a new trial motion, the motion is overruled by operation of law seventy-five days after the judgment's signing date. *See* Tex. R. Civ. P. 329b. Thus, by operation of law, the trial court has denied Regalado's motion. We deny his request for mandamus relief.

## Conclusion

Having sustained Regalado's fourth issue, but having overruled his dispositive second issue, we affirm the trial court's judgment dismissing Regalado's claims with prejudice.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: May 9, 2024